UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BP PRODUCTS NORTH AMERICA INC.,

    Plaintiff,

v.

HAGOP BAGA,

    Defendant.

CIVIL ACTION NO.

08-1802 (DMC)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Plaintiff BP Products North America Inc. ("Plaintiff" or "BP") submits this memorandum of law in Support of its Order to Show Cause for a Temporary Restraining Order and a Preliminary Injunction.

### PRELIMINARY STATEMENT

This case involves a BP-branded service station located in Cliffside Park (the "Service Station") operated by defendant Hagop Baga ("Defendant" or "Baga"). At the back end of the Service Station, a retaining wall has collapsed causing a large part of the yard of a neighboring residential property to collapse onto the Service Station. In addition to soil, the neighbor's fence, deck and above-ground swimming pool have also collapsed onto the Service Station property. The foundation of the neighboring residence is exposed and appears compromised, such that there is a danger of that house collapsing onto the Service Station.

With the onset of warmer weather and heavy spring rains, the danger of further erosion and migration is particularly acute. Although BP is not certain that the collapse of the building will happen right away, BP cannot take the risk of such a disaster precipated by the spring rainy season. Accordingly, BP desires to immediately begin work at the site to construct a new retaining wall.

Defendant Baga operates four BP stations in addition to the one at issue here. He has refused to allow BP onto the Service Station property to begin construction. Baga is apparently upset that the Service Station will be closed for the approximate 12 to 14 weeks needed for this major construction project. BP has already agreed that it will not charge Baga rent during the construction project. Moreover, under the parties' Lease Agreement, it is Baga who should be paying the $600,000 cost to construct a new retaining wall, but BP has agreed to front this cost. While Baga has also asked that the service bays for vehicle repairs remain open during construction, BP cannot allow this to happen given that the bays will be in the middle of the construction zone so that this is again a safety issue.

Whatever economic concerns that Baga may have, it is important for the Court to realize that BP shares the same economic incentive to re-open the Service Station to again sell gasoline. BP, however, does not bring this case out of economic concerns, but out of concerns for safety. Any economic concerns of Mr. Baga do not compare to a situation where, as here, safety is at issue, and this Court should not tolerate the distinct possibility that the spring rains will cause a catastrophe at the Service Station. BP therefore seeks an Order of this Court to immediately allow BP to go onto its own property to begin construction of the new retaining wall.

## STATEMENT OF FACTS

Facts relevant to the instant dispute are contained in the accompanying Declarations of Joseph DeAntonio, Jr. ("DeAntonio Dec.") and Jonathan K. Cooperman, to which this Court is respectfully referred.

## ARGUMENT

### THE COURT SHOULD ORDER DEFENDANT TO ALLOW BP TO COME ONTO ITS OWN PROPERTY TO BEGIN CONSTRUCTION OF A NEW RETAINING WALL FOR SAFETY REASONS

**A.   The Standard for Injunctive Relief**

In this Circuit, a district court must consider the following four factors when determining whether to issue a preliminary injunction: (1) whether the moving party can demonstrate success on the merits; (2) whether the moving party will be irreparably harmed absent the injunction; (3) the possibility of harm to other interested persons; and (4) the public interest. See Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 197-98 (3rd Cir. 1990); see also Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3rd Cir. 2000); United States v. City of Asbury Park, 340 F.Supp. 555, 567 (D.N.J. 1972) ("The basis of injunctive relief in the Federal Courts has been historically predicated upon a finding of irreparable harm and the inadequacy of legal remedies").

This Circuit has also recognized the concept of a mandatory injunction. As stated in United States v. Price, 688 F.2d 204 (3d Cir. 1982),

> The appropriateness of issuing a mandatory preliminary injunction in a case in which the status quo "is a condition not of rest, but of action" was recognized in Toledo, A.A. & N. M. Ry. Co. v. Pennsylvania Co., 54 F. 730, 741 (C.C., N.D. Ohio 1893).

\* \* \*

> The facts of the present case show clearly that the status quo is a condition of action which, if allowed to continue or proceed unchecked and unrestrained, will inflict serious irreparable injury. Therefore, a mandatory preliminary injunction designed to prevent that injury would have been appropriate if the other criteria relevant to issuing preliminary injunctions were satisfied. A preliminary injunction designed to prevent an irreparable injury is conceptually distinct from a claim for damages.

Id. at 212.

As demonstrated herein and in the DeAntonio Declaration, absent the grant of an Order requiring Defendant Baga to allow BP to begin construction, there is a real risk that a residential property will collapse onto the Service Station. This type of danger to the public safety warrants mandatory injunctive relief requiring Baga to allow BP onto the property to remedy this hazardous situation.

**B.     BP Is Likely To Succeed on the Merits of Its Claim**

It is BP that is the lessor of the Service Station in question. BP owns all of the infrastructure of the Service Station, such as the dispensing pumps and the underground storage tanks. Defendant Baga merely operates the Service Station, earning a 13.2 cent commission on each gallon of BP's gasoline that is sold (see Lease Agreement attached as Exhibit "B" to the DeAntonio Declaration).

BP's relationship with Baga is governed by a Commission Marketing Agreement and an attendant Lease Agreement. The responsibility to keep the Service Station property in a safe condition is actually Baga's, as the Tenant. Thus, § 9 of the Lease Agreement provides, in pertinent part, as follows:

> B. Tenant shall maintain and repair all non-fuel-related assets and equipment at the Leased Premises.... Tenant shall keep the Leased Premises and Access Area, including adjoining access, alleys and sidewalks in a clean, safe and healthful condition.
>
> \* \* \*

4

> D. Tenant shall be fully responsible for, and shall repair, replace or reimburse BP for all costs of repair or replacement, relating to damage occurring to any portion of the Leased Premises or to the building and fixtures located herein which occurs during the term of the Lease.

(DeAntonio Decl. Ex. B.)

Furthermore, § 9(B) of the Lease Agreement provides that "BP may replace certain non-fuel-related assets or equipment as BP deems necessary in its sole discretion." (Id.). Section 9(C) also provides that "Tenant shall not commit nor suffer waste upon the Leased Premises." (Id.) The term "waste" is defined in New Jersey as an "act or neglect which tends materially to deteriorate" the property. See generally, Korona, New Jersey Practice Series, Landlord and Tenant Law § 46.2.

Through his refusal to permit BP onto the Service Station in order to repair a serious safety hazard, Baga has breached his Lease Agreement. Moreover, these breaches are grounds for termination of the Lease Agreement and Commission Marketer Agreement. Section 19 of the Lease Agreement provides that one of the grounds for termination is as follows:

> 2. Failure to maintain or follow any of the [§ 9] Operating Standards and Procedures as provided in this Lease or any operating standard or procedure issued by BP from time to time.

(DeAntonio Decl. Ex. B.) Likewise, § 23 of the Commission Marketer Agreement provides that a ground for termination is a breach of the Lease Agreement. (DeAntonio Decl. at Ex. A.)

Baga's refusal to either fix this acute safety hazard, or to allow BP to remedy the situation, is thus grounds for the termination of his Commission Marketer Agreement and Lease Agreement.

### C.  Irreparable Harm Will Be Suffered In The Absence of Immediate Injunctive Relief

"The irreparable harm requirement [for injunction relief] is met if a plaintiff demonstrates significant risk that he or she will experience harm that cannot be adequately

5

compensated after the fact by monetary damages" Adams v. Freedom Forge Corp., 209 F.3d 475, 484-85 (3d Cir. 2000). For mandatory injunction, such irreparable harm will be found if the proposed required action will prevent a harm to the public. For example, in United States v. Malibu Beach, Inc., 711 F.Supp. 1301 (D.N.J. 1989), the Court issued a mandatory injunction requiring the defendant to remove fill improperly deposited in wetlands which was found to be a danger to wildlife. Cf. Pennsylvania R.R.Co. v. Kelley, 75 A. 758 (N.J. Chancery Court 1910) (Court issued mandatory injunction requiring the removal of a building because "a building which, by reason of its inherent weakness or its dilapidated condition, is liable to fall onto a highway and injure passersby or persons lawfully thereon, is a public nuisance").

The issues here are a concern involving public safety, not merely money damages. A further collapse of the neighboring property onto the Service Station is a distinct possibility. Individuals could be injured, especially in a worse-case scenario where flammable and combustible products are implicated in a collapse. This Court should not countenance that possibility. This is especially the case since BP is not seeking an Order requiring Baga to do the construction work himself, but merely that Baga allow BP onto the property so that BP itself can carry out the work.

### D.  The Public Interest Will Be Served By A Mandatory Injunction

The neighboring property is already eroding onto the Service Station. Absent BP being allowed to repair the retaining wall, there is a risk that the neighboring residence will further erode. This is a real risk now that warm weather has arrived which will likely be accompanied by spring rains. A residence collapsing onto a Service Station will be a severe safety danger. It is in the interest of the public for this Court to require Defendant Baga to allow BP to enter the Service Station and to construct a retaining wall to avoid such a catastrophe.

### E. Defendant Baga Will Not Be Harmed By An Injunction, But Will Instead Benefit From BP's Construction of a New Retaining Wall

Constructing a new retaining wall will benefit defendant Baga. It will ensure the integrity of the Service Station so that Baga can continue to operate there without the danger of the neighboring property collapsing onto the Service Station. Indeed, BP's interests in swiftly completing construction are completely aligned with Baga as BP too loses out on revenue from gasoline sales each day the Service Station is closed.

Moreover, under the parties' Lease Agreement, Baga is actually responsible for repairs such as the retaining wall. BP, however, is paying the roughly $600,000 cost of this major construction, thus benefiting Baga by fronting the cost for a repair that Baga should be paying to do.

## CONCLUSION

For all the reasons stated above and in the accompanying Declarations of Joseph DeAntonio Jr. and Jonathan K. Cooperman, BP's application should be granted in all respects, together with such other and further relief as this Court may deemed just and proper.

Dated: April 14, 2008

KELLEY DRYE & WARREN LLP

By: _____
Sean R. Flanagan
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

Attorneys for Plaintiff
BP Products North America Inc.

NY01/COOPJ/1278637.3