Decl.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BP PRODUCTS NORTH AMERICA INC., <br><br> Plaintiff, <br><br> v. <br><br> HAGOP BAGA, <br><br> Defendant. | CIVIL ACTION NO. <br><br> **DECLARATION OF JOSEPH DEANTONIO, JR. IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION** |

Joseph DeAntonio, Jr. declares, under penalties of perjury pursuant to 28 U.S.C. §1746, the following:

1. I am the Area Maintenance Manager for plaintiff BP Products North America Inc. ("BP"). I make this declaration in support of BP's application for a temporary restraining order and preliminary injunction. I have personal knowledge of the facts stated herein.

**The BP Service Station At Issue**

2. There are many BP-branded service stations located throughout New Jersey. As part of my job, I am responsible for monitoring BP facilities in New York and New Jersey for construction and maintenance activities.

3. One of the stations that I handle is located at 342 Gorge Road in Cliffside Park (the "Service Station"). The Service Station is comprised of several gasoline dispensing islands with four fuel dispensers. At the back of the Service Station, there is also a small building housing three service bays for vehicle repair.

4. BP does not itself own the property where the Service Station is located. The property is instead leased by BP from a separate landlord who is not a party to this lawsuit.

5. BP, however, does not operate the Service Station itself. Instead, the Service Station is operated by an individual named Hagop Baga pursuant to a Commission Marketer Agreement and Lease Agreement (copies of these agreements are attached hereto as Exhibits "A" and "B"). The basic terms of that Commissioner Marketer arrangement provide that BP owns all of the infrastructure at the facility. This includes the fuel pumps and dispensing system and the underground storage tanks. BP delivers gasoline to the station. Mr. Baga never takes ownership of the BP gasoline. He simply sells the gasoline at the station and receives a commission of 13.2 cents for each gallon sold.

**The Collapse of the Retaining Wall and the Serious Danger it Poses**

6. The building with the service bays is located at the rear of the station. Approximately 20 feet behind the building is the property boundary. On the other side of the property boundary is a private house which is elevated above the Service Station. Attached as Exhibit "C" is a picture showing the Service Station and the private residence to the rear of the Service Station, slightly elevated over the Service Station. Originally, that house consisted of a multi-floor single family residential building, with an attached wood deck and a backyard with an above-ground swimming pool. The deck, backyard and swimming pool were close to the area of the Service Station, approximately 15 to 20 feet from the boundary of the Service Station.

7. When Mr. Baga started operating the Service Station, there was a small retaining wall by that property boundary. The wall helped keep the soils of the neighboring backyard intact and prevented soils from eroding and migrating onto the Service Stations. Since the neighboring property is elevated over the Service Station, without such a wall soils from the

neighboring property would naturally erode onto the Service Station. The original retaining wall was made of stone and mortar and was very old.

8. In 2007, the original retaining wall began collapsing onto the Service Station property. Without that wall, there was nothing to hold back the soils from the neighboring property which began collapsing onto the Service Station property. Attached as Exhibit "D" are pictures showing the rear of the Service Station. The remains of the Service Station retaining wall are shown below the horizontal wood beam fence which was originally on the neighboring property.

9. BP realized that a new and more sturdy retaining wall needed to be constructed. Accordingly, BP immediately applied with local town for a permit to reconstruct the retaining wall.

10. During the time that the permit application was pending, the situation became much more serious. Approximately 25% of the neighbor's yard has now migrated and collapsed onto the Service Station. This included the neighbor's outdoor deck, above ground swimming pool and border fence which collapsed onto the Service Station property. BP arranged to cart off the debris that collapsed onto the Service Station. Exhibit "E" contains several photographs of the area where portions of the neighboring yard previously collapsed onto the Service Station. The structure with the roof depicted in the last picture of Exhibit "E" is the building housing the service bays on the Service Station property.

11. The residents of that neighboring property have expressed their grave concern to BP. Because of the large degree of soil erosion, portions of the foundation of the house are now exposed. Without the soils to hold the foundation in place, there is of course a

3

danger of the house itself shifting and then collapsing. The residents of that house no longer go outside in that area for fear of causing the soils to further erode.

**The Danger of Further Collapse Is Now Greater
Given the Warm Weather and Spring Rains**

12. Soil continues to migrate onto the Service Station. There is now an acute danger of further serious migration since spring is upon us and soils tend to migrate most with heavier rains. When soils become saturated with rain, the soils become muddy and tend to migrate with water. Without a retaining wall to hold back the soils, there will no doubt be a further migration on the Service Station.

13. Moreover, as the dirt continues to move, there is a real risk that the integrity of the foundation of the house will be compromised and not be held in place. The house may then topple onto the Service Station. That is something BP obviously needs to prevent for the safety of the residents of the house. Indeed, a house toppling onto a Service Station which stores and disposes flammable and combustible products would be an extreme safety hazard.

14. While BP does not know if this will happen immediately, BP is not willing to take the chance that this could happen and set off a catastrophic accident in a residential neighborhood. Accordingly, BP has arranged for contractors to begin immediate work on reconstructing the retaining wall.

**Mr. Baga's Refusal to Allow BP onto the
Property to Repair the Retaining Wall**

15. Defendant Baga, however, is refusing to let BP on the property to perform this work. BP at great expense has hired a construction specialist, Salamone Brothers, to perform this job. BP's contractors were originally scheduled to begin work on April 7th.

4

However, Mr. Baga refused to cooperate and BP delayed construction work until April 14th. Mr. Baga, however, continues to refuse to allow BP onto the property.

16. Construction in estimated to last for approximately 12-14 weeks. This is a major project, with BP installing a new retaining wall composed of steel beams and a precast concrete panel. Excavation is necessary as the steel beams will be set into the subsurface. The cost of this project is estimated at $600,000 and BP will front the entire cost.

17. I understand that Mr. Baga is concerned about having his station closed during the construction process. It is important to remember that BP has every incentive to complete this work quickly and to reopen the station. Like Mr. Baga, BP earns money by selling gasoline.

18. I understand that one of the reasons Mr. Baga has refused to allow BP onto the Service Station is that BP will not permit Mr. Baga to operate his service bays during construction. The reason for this is completely safety related. This will be a major construction project and a large amount of construction equipment will be needed to be placed on a relatively small Service Station, including a backhoe, dump truck, drilling rig and a large crane. The majority of the Service Station will be a construction site and BP cannot risk having Mr. Baga and his customers on the site.

19. In short, BP needs access to the Service Station property to construct a retaining wall. Absent this construction, there is a real and serious danger of the neighboring property and house collapsing onto the Service Station. BP cannot accept this risk and neither should this Court.

20. I declare under the penalty of perjury that the foregoing is true and correct.

Dated: Sewell, New Jersey
April 14, 2008

*Joseph DeAntonio, Jr.*