# KENNETH W. HERBERT
### ATTORNEY AT LAW
353 BROAD AVENUE, - SUITE 205
LEONIA, NEW JERSEY 07605

(201) 944-9898                                                                  (201) 944-4374

April 10, 2008

**VIA - FACSIMILE (212) 808-7898**

John Cooperman, Esq.

**Re: BP/Hagop Baga**

Dear Mr. Cooperman:

In the event we end up in court, I thought it best that my client's position be clarified at this time.

Let me start with a little history. A year or so ago, a portion of the stone wall at the back of my client's gas station collapsed.

Last summer, BP verbally informed my client that an imminent safety issue existed, which required BP to immediately come onto the property to repair the condition. In August of last year, I wrote to BP requesting a meeting to discuss the matter. BP never responded.

The "imminent safety issue" continued unabated from last summer to the present time without any further damage. Over these past eight months, BP never even discussed the matter with my client. I am told that BP sought and obtained a work permit late last year but never attempted to move forward until now with the proposed repairs.

Suddenly, last Thursday, April 3, 2008, BP verbally advised its lessee (my client) that repair work was scheduled to commence on Monday, April 14, 2008, necessitating the closing down of the entire business operations for an indefinite period of time. Not only did my client's business have to shut down for this period, but a portion of the leased premises was going to be removed to allow for the needed construction and not replaced. However, BP refused to consider any reduction in rent thereafter to compensate my client for the loss of a portion of the building he leases.

As one might expect, these unilateral demands of BP did not sit well with my client, who makes his living from this business. Like many other hard working people, my client has a mortgage to pay each month and two children to feed. He simply cannot close down his business indefinitely based on a telephone call from BP.

I was immediately contacted by my client with directions to try to work out an amicable solution with BP – something along the lines of at least keeping the bays open except when heavy machinery is being used and replacing any portion of the leased structure that is damaged during the construction. My client even agreed to replace the portion of the structure that is being removed by BP at a cost to BP substantially less than BP estimated.

My request to meet with BP representatives and their lawyer was refused outright, ostensibly for the reason they were all out of town. Keep in mind, please, that as of this date, we have not seen so much as a letter from any BP representative or attorney. My client is being told to close his business for some indefinite period of time and accept what ever structure is still remaining when he returns – all based only on a telephone call.

As much as my client does not want to battle BP and expend counsel fees he cannot afford, he cannot concede to these unreasonable demands. For this reason, I have informed you that BP's construction crew will not be permitted on the leased premises without a fair and reasonable resolution of these issues at the outset.

Your response yesterday over the telephone of veiled threats has not shaken my client's resolve. His position remains the same as set forth above.

If BP's threats are implemented, we will seek the aid of the court without delay. However, I say one last time, our strong preference is for an out-of-court resolution that recognizes the rights and interests of both parties.

Very truly yours,

Kenneth W. Herbert

**KENNETH W. HERBERT**

KWH/llm
cc:    Mr. Hagop Baga (via – email)

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

101 PARK AVENUE

NEW YORK, NEW YORK 10178

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

JONATHAN K. COOPERMAN

DIRECT LINE (212) 808-7934
EMAIL jcooperman@kelleydrye.com

April 10, 2008

**VIA FACSIMILE**

Kenneth W. Herbert
353 Broad Avenue
Leonia, NJ 07605

      Re:    BP/Hagop Baga

Dear Mr. Herbert:

      Your letter of today does not fairly portray the situation. As I have repeatedly told you, BP needs access to Mr. Baga's property to repair the retaining wall for purposes of safety. The retaining wall issue is obvious to anyone who sees the station. Because the retaining wall has collapsed, a large portion of the neighbor's property has eroded and migrated onto the station itself, including the neighbor's above-ground swimming pool and fence which collapsed as a result of the migration of the yard. With the onset of spring and heavy rain, there is a significant risk that the foundation of the house will become compromised and possibly collapse onto the service station.

      Equally without merit is your suggestion that this is not an imminent danger simply because time has passed since BP first spoke with your client about this matter back in August. As I explained to you, BP applied with the Town for permit to reconstruct the retaining wall last summer. As soon as the permit was granted, BP made the necessary arrangements to come on to the property and reconstruct the retaining wall. This could not be done in winter since the retaining wall construction requires excavation which could not be done in winter. With the onset of warmer weather and the rainy spring season, the danger of further soil movement is at its greatest.

      You statement that BP has not communicated with your client is also untrue. I understand that BP representatives have been in touch with Mr. Baga at several points and met with him most recently last week. Mr. Baga, however, has consistently refused to cooperate.

NY01 COOPJ 1278532.2

KELLEY DRYE & WARREN LLP

Kenneth W. Herbert
April 10, 2008
Page Two

      As I understand your position, Mr. Baga is not willing at any point in time to let BP onto the property if this means shutting his service bays. BP has considered your request to keep the service bays open during the construction period. However, as I have explained to you this is a major construction project requiring a great deal of equipment to be on the property, such as a backhoe, dump trucks, a huge crane and a drilling rig. The retraining wall is located approximately 20 feet from the service bays, right in the area of major construction. BP simply cannot tolerate a situation where service station activity is ongoing in the middle of a major construction zone.

      While you talk about the burden to your client, you neglect to mention that BP has stated that it will not charge Mr. Baga rent during the period of construction. You also fail to take into account that under the relevant lease agreement BP has the right to charge Mr. Baga the approximately $600,000 that it would cost for this construction. BP could also terminate Mr. Baga's lease agreement for his own failure to undertake these necessary repairs. BP, however, has chosen not to proceed with these options, but is instead itself paying for these improvements so that Mr. Baga can in fact stay in business. As an operator of four other BP stations, Mr. Baga surely appreciates that BP has a strong interest in quickly remedying this safety issue so that the station can re-open for the benefit of both BP and Mr. Baga.

      Finally, I did not make any "veiled threats" over the phone yesterday. I merely explained that BP cannot sit idly by while there is a safety issue and that it made no sense to force BP to seek Court intervention. I ask that your client reconsider his position.

      Very truly yours,

      Jonathan K. Cooperman

JKC:yc

NY01/COOPJ/1278532.2